Good morning and welcome to the Ninth Circuit. Before we begin, I would like to acknowledge and thank Judge Singleton. He is in his day job, a district judge in Alaska. He's helped us out yesterday and is helping us out today. And we are delighted to have him here. Thank you. Thank you. We've got several cases submitted on the briefs. I'll just read those off. United States v. Martinez, Saban v. Gomeshi, Boesinger v. Belden CDT. Those are all submitted on the briefs. We've got three argued cases, the first of which is Basler v. Capital Group Companies, or I think I've got it on here, Chin v. Capital Group. When you're ready. Good morning, Your Honors. Michael Reese from the law firm of Reese Richmond LLP on behalf of the plaintiffs. And I'd like to reserve two minutes for rebuttal time at this time. OK. I'd like to give a brief background to the case. It's a case involving mutual fund investors, mom and pop type of investors who are saving up for their retirements. The case is whether or not the issue before Your Honor is whether or not inquiry notice can be examined at the motion-to-dismiss stage. The allegations in this case are that the defendants misappropriated hundreds of millions of dollars, almost half a billion dollars of these mom-and-pop mutual fund investors. There was investigation by the counsel. Mr. Reese, may I ask you a question? Yes, Your Honor. When did you first make the acquaintance of Mr. Basler and Ms. Chin? Ms. Chin was the one to originally file the case. She came to my firm where I was working at the time after the NASD administrative trial, which was on August 30th of 2006. Mr. Basler and Mr. Geis came to our firm that I was at at the time after notice went out when her complaint was filed on December 5th of 2006. So roughly the January to February time frame. They then had the largest losses and were appointed as lead plaintiff. So on a brief history of the cases that the California Attorney General's Office and the NASD both brought complaints against the defendants. The first complaint was brought in February of 2005 by the NASD. That eventually went to the equivalent of a trial in August of 2006. The California Attorney General's Office case was brought in March of 2005. The statute of limitations for securities fraud claims is two years upon discovery. This case was brought in December of 2006, so well within the two years if those dates are used as when the notice period is triggered, when the California, I'm sorry, when the NASD brought its action in 2005. So you have until February 2007. What the lower court did is said, well, even though the plaintiffs don't have actual notice, and everybody can see none of these plaintiffs actually knew about this fraud until the filing of their complaint. The lower court went out and did some internet research on its own, as well as relied upon documents submitted by the defendants and said, I actually think that there was inquiry notice at a much earlier date and cites November 2003 as being that date. The district court cites a number of articles not readily available, as well as a complaint that was filed in the central district as well that's pending before that court. So there are three issues before Your Honor. First is, can an inquiry notice examination be made on a motion to dismiss? We submit that it cannot. That the Betts case is controlling on this matter. Why not? It's so factually intensive. What if the facts are apparent? That, I would say, let's talk about this particular case. The time of decision, if the facts are sufficiently clear to permit the motion to be granted, it makes no sense to let the case be extended for months or years to get to the next stage. Correct. There's no per se rule that says you cannot do an inquiry notice. It's case by case. This type of case is a good example of why it is improper. It basically- Counsel, given your argument, doesn't this case turn on the extent to which, as the district court felt, knowledge that would have been known in general to the investing public is imputed to the plaintiff, whether she had actual knowledge or not. In other words, is that appropriate? And if it is not, what case law stands for the proposition that you cannot impute knowledge generally available to the investing public to a particular plaintiff? Sure. Under the inquiry notice standard, you look at what the ordinary investor would or should have known. So if you look at the record, that knowledge can be imputed to the individual plaintiff. But if you look at the information available here, most of it wasn't available to the ordinary investor. You have to think, who are the ordinary investors? These are ordinary mom-and-pop type of mutual fund investors. What in the case law tells us what we mean by ordinary investor? Is the ordinary investor assumed to read the Wall Street Journal? Does it say a general circulation, but oriented toward investors' publication? There is no standard on what the ordinary investor is as far as whether or not that person reads the Wall Street Journal. And that's why this Court has said repeatedly, as in the Libid case and the Betz case, that is really an issue for a jury. Jury of your peers to determine what an ordinary investor should have or did actually know. And if you look at the articles cited... I've got a slightly different question. My question is, who is the individual investor? Is it somebody who is, listen, I just, you know, I just sent off my money, I don't know nothing. Or is it somebody who actually, you know, reads a little bit? You would expect them, it's a reasonable person standard. Our clients are retirees in Florida. They don't have, they don't, they look at the sports page more than they look at the business page. The articles relied upon by the Court, if you look at them, the first one is an article in the Los Angeles Times. The next one is, I think, the San Jose Mercury News. These are newspapers not available to most of the country. Reputable publications, but it's not something that you could expect the ordinary investor to be looking through. Additionally, the defendants denied any wrongdoing. The most salient point would be that the SEC is looking into the industry as a whole, and American Funds is one of those targets. An SEC investigation amounts to nothing. In fact, the SEC has not brought any charges in this matter. But when the California Attorney General's Office levies charges and the NASD levies charges, that is, you can say, what an ordinary investor should have known about that. Mutual funds are a little bit different, too, than a stock. You can check your stock on the Internet, and you can see the price every day. You can definitely do that with a mutual fund. Counsel, did you find any case law in any circuit, preferably this one, but in any circuit, that deals not with situations of face-to-face fraud in person-to-person actions, but rather allegations such as your own that investment organizations marketing mutual funds defrauded customers of mutual funds, in which the question of imputed knowledge, what knowledge would be known to the reasonable investor, was discussed? There is a recent case from the Second Circuit on this issue. It was issued after the briefing was complete on this, but I have the site here. It's Staehr, S-T-A-E-H-R, versus Hartford Financial Services. It involves kickbacks, similar to those at issue here, and the site is 547F3-406. And in that case, the defendants argued there were newspaper articles, in fact, there was a class action complaint filed in California Supreme Court that should have put the plaintiffs on notice in that particular case. The District Court, actually the Second Circuit said that's not sufficient, those aren't sufficient storm warnings, and even if they are, you have to give a reasonable amount of time to investigate. That's the third point, if you read that case, it's right on point. It basically, the same arguments raised by the defendants here were raised in that situation, and the Second Circuit rejected them. The lower court had dismissed the complaint, the Second Circuit rejected them. Let me ask you this, as your time is running, but we'll make sure everybody gets a chance to say what they need to say. Now, the district judge dismisses this on a 12B6. If the district judge had said, well, I'm considering things outside of the complaint of which I can't take judicial notice and had converted it into a summary judgment, would you be making the same argument? It would be fairly similar, but we would point to other facts. For instance, one of the articles cited by the defendants, and we haven't looked for other articles out there, but they may be out there. This is what the article states. This is, they rely upon this as inquiry notice. Now, this is just a straight procedure. Oh, I'm sorry. Does it make a difference whether we characterize this as a 12B6 or conversion of a 12B6 motion to a summary judgment because of matters outside the complaint? If it was converted to a summary judgment motion, we would want to submit an evidence, articles where the defendants say we're not doing anything wrong, articles which reflect that because they were not touched by the fund scandal in 2004, they actually took business away from other funds that were implicated in the fund scandal. They actually benefited from the lack of knowledge of their fraud that we've alleged here. And in the posture in which it shows up as a 12B6 dismissal motion, you didn't have the opportunity to introduce those articles that you now say you would have introduced had it been a summary judgment. Why didn't you have that opportunity? The focus of the argument, and if you look at the defendant's brief, was on all these other arguments as you haven't pled materiality, you haven't pled scienter. This argument was actually towards the end of their brief. It was certainly taken as seriously as any other argument, but you're only required to respond to arguments in the front part of the brief. That's no, no, Your Honor, but. You tell us that the defendants attached some articles. Yes. I take it you sought to oppose consideration of articles, but that it occurred to you that if you had things you wanted to put in front of the court, that's the opportunity to do it? Well, we felt that would be improperly converting it to a summary judgment motion. And we also felt that what the evidence presented to the court at the time certainly did not rise to the level of inquiry notice. If you read the articles, there's nothing specific enough to put an ordinary, reasonable investor on notice to then say, I think that there's fraud. Where the defendants are consciously defrauding me, and it's material. That information did not come out until February and March of 2005 when the California Attorney General's office came out and said, there's $450 million of investors' money that has been used improperly. There was not a single piece of reporting anywhere regarding that number. Or the scienter element, where if you read our complaint, we have email in there. None of that existed publicly before February, March of 2005. We filed our complaint well within two years of that time period. If we had filed a complaint before then, it would have been dismissed as insufficient. Yeah, that's an interesting and tricky question here, because the pleading standard is higher. So what happens if you have inquiry notice in the sense that there's enough there you should inquire, but you don't have enough to make your complaint? That's tricky. Let's hear from the other side, and then we'll give you a chance to respond. Thank you, Your Honors. Good morning, Your Honors. Sean Murphy from Milbank Tweed for the defendants. Here, the district court held that plaintiff's claims were time barred because the plaintiffs were on inquiry notice. And plaintiff's main argument against reversal is what I read in the briefs was kind of a per se rule that on a motion to dismiss, it's too factual an inquiry. I think he backed off that a little bit and says, there might be some situations where you can decide on a motion to dismiss. And we'd submit this is one of those cases that's atypical for two reasons. First, the volume and type of publicity around revenue sharing practices was extraordinary. And it elevates this case to one of those cases where you can say inquiry notice exists as a matter of law. Counsel, as I understand it, your position rises or falls on acceptance of the district court's decision to impute knowledge to Ms. Chin of what apparently was known, or at least being mooted about, in the financial community. Did you find any authority that would be similar to this case or this relationship in which notice to the financial community was held to be notice to someone who was not herself a member of that community? Well, I think as a mutual fund investor, and if notice is to the mutual fund industry, they would be a part of it. But I think there's- Since when is an investor part of the industry? No, I mean part of the mutual fund, I think the notice here was to- Part of the universe. Part of the universe. I'm talking about, the issue here really is twofold. You don't contend that Ms. Chin had knowledge of what turned out to be her cause of action. Your contention is she had notice of facts that should have put her on inquiry. But as I understand it, the notice you're talking about is once removed. Because it's not notice to her personally, it's notice that would have been understood by members of the financial community. And my question to you is, did you find any authority? Apparently, your opponent found a Second Circuit case that says it's not enough. I haven't read that case yet, so I don't know what it says. But assuming he's right, did you find any contrary authority? Yeah, I think there are numerous cases out there. Some are cited in our brief. The Bennett case, which is a Third Circuit decision affirming dismissal on a 12B6 motion of inquiry notice. There was no evidence that the mutual fund investor there had read any of the articles at issue. They were just like this case, widely circulated articles. The D. Benedict- Widely circulated in the reading area. There's a saying, if we've got investors who don't live in the Bay Area and don't live in Los Angeles, I'm not sure that the San Jose Mercury News or the L.A. Times does much. There was a time when I'd hoped that the L.A. Times would go national, but it never has. It never made it past San Diego. I'm glad you raised the point, Your Honor, because he did mention the San Mercury News and the L.A. Times, but- San Jose. San Jose Times. Please look at the articles that we submitted. It's the San Jose Mercury News. Thank you. I'll admit that it's not as widely circulated as the L.A. Times. I don't read it. I'm from New York, unfortunately. But there's articles from the Wall Street Journal. Look at the placement of these articles, Your Honor. These are A1. These are the front page of the Wall Street Journal. Numerous times. C1 of the New York Times Business Section. Numerous times. Those are only the ones that highlight capital research. The revenue sharing scandals were widely publicized in papers across the country. If you typed in revenue sharing in Google in 2004, you would have gotten 5 million hits. The entire industry was under siege. There was two dozen advisors that were sued in 2004 for revenue sharing practices. What do we do with the intersection of inquiry notice and heightened pleading standards? Meaning, in order to bring a successful complaint, you need to satisfy more than just Rule 8. So what do you do with, okay, so all these newspaper articles are out there saying bad things happened. But the newspaper articles may not say that the defendants have sufficient scienter or given you enough detail so that you can plead a complaint that's going to survive. And what are you, as an individual investor, supposed to do to inquire as to whether or not you've got a cause of action that can withstand a 12B6, not on statute of limitations, but rather on pleading standard? And to that, and I think Mr. Reese sort of said, well, there's nothing in these articles that would tell you fraud was afoot. But if you look at the articles, I don't mean just fraud was afoot. I mean, what are you supposed to get in terms of inquiry notice that would allow the ordinary investor to say, I can inquire and find out enough information that I can plead with particularity? That's hard. Right. And so the first part would be, was there storm warnings of fraud? And if you look at the articles, for example, Exhibit of Record 92, the article is state to probe three mutual fund firms. At issue is whether the companies defrauded investors. Where's this from? This is Exhibit of Record 92. Where's it from? What is it? I don't, that one might be the San Jose Mercury Times. This isn't going to be somebody outside of, not going to use San Jose a whole lot of good. So there's, look at all of the articles we submitted. I went through all of them and just pulled out some buzzwords. These are from the Wall Street Journal and New York Times. Fraud, scandal, conflicts of interest, abuse of sales practice, undisclosed fees, improper sales practice, deception. These are words that I pulled out of these articles from the New York Times and Wall Street Journal throughout all of them. So clearly there's a suspicion there. And then to Your Honor's point, when do you switch and say, well, when would due diligence arise such that they could go out and find enough facts to establish a complaint? And I have two answers to that, Your Honor. First, all of these practices, if you started doing due diligence, if your suspicion was raised from the storm warnings and you start doing due diligence, what you'd go find is the Morgan Stanley SEC consent order. You'd find the front page of the Wall Street Journal detailing the Edward Jones revenue sharing programs. The Morgan Stanley programs that were laid out in gory detail, every aspect of them. And it was widely publicized in the New York Times and Wall Street Journal that American funds participated in these programs for which Morgan Stanley paid a $50 million fine for fraud. You could clearly get enough information to bring a complaint. But I could stop there and win, I think. But here, this is a very unique case that we haven't talked about yet in the sense that there was another complaint filed in 2004, the Corby complaint, where they brought a fraud claim based on revenue sharing in July 2004, two and a half years before this case. Two plaintiffs, two investors in the American funds complex, did some due diligence. They were represented by Mr. Reese, who's sitting right here. So no doubt Mr. Reese had sufficient knowledge, and it may be the reality of the practice in this field, means we should look at the lawyers rather than the investors. But I don't know that you can attribute the attorney's knowledge to his subsequent clients. No, but that's a fair point. But I don't think he can represent, I don't think he can stand up before this panel and say, grounds for a fraud claim did not exist in 2004. He has an ethical duty to make sure there's grounds that exist. But that is not the inquiry. The inquiry is whether or not these particular plaintiffs were on inquiry notice, not whether there were, in fact, grounds. Correct, Your Honor. But I would say evidence of that is what was out there in the public realm. Was there sufficient information in July 2004 to give them enough facts to bring a fraud claim in July 2004? And Mr. Reese has to say, yes, there was. Because if you look at that Corby complaint, the very first paragraph says, this complaint is brought based on investigation of counsel into publicly available information. It mentions the SEC orders. It mentions all of the press. I understand the argument, and I understand Judge Reese is a very sensible, intelligent judge. What gives me pause here is that this argument says that to the degree you have schlumps investing in your mutual fund, you're probably going to be protected because they're not going to discover it in time. That's where the argument goes. And I don't think that's the case, Your Honor. I think what it is Why is that not the case? Because when you have inquiry notices out there saying, when should there be a time period where a plaintiff could bring a claim, here there clearly was. We know there was. I don't think you're taking my point. A lot of people do just read the sports page. A lot of people, particularly people who are small investors, are not sophisticated investors. They don't read the financial press. And if they're held to a standard of, well, you were on inquiry notice because the Wall Street Journal and the New York Times had this all over the place, they say, I haven't seen the Wall Street Journal and the New York Times except three years ago somebody left it on a chair in the bus station. Those people, in fact, will not have notice. They'll come in maybe much later when maybe there was something on the radio about the attorney general finally brought a complaint. And they said, maybe that's why I'm losing money. Those people, on your theory, are simply out of luck. I understand your concern, Your Honor. But that's why there's a limitations period and a reasonable period of inquiry notice that's two years. There are going to be people that bury their head in the sand, that don't read. No, my person did not bury their head in the sand. My person, my hypothetical person, lived his or her ordinary life, was defrauded by, I won't say your clients because I'm not going to judge what happened and so on, was defrauded, that's the theory, and when they finally figure out what's happened, that your client says, gee, if you'd only been a sophisticated investor, you could have caught me. Too bad. And if that's the standard, then we shouldn't have inquiry notice. Because you can always make that argument. Why not adopt a rule that is more consistent with the common law of inquiry notice and say that the particular plaintiff has to have notice of facts that would put a reasonably prudent person on notice that she should make an investigation. So that the triggering event would be when the particular plaintiff first had notice of the facts that would put this hypothetical, ordinary, prudent investor on notice. Then it starts running as to her. It's a fair point. I think it would be congressional in nature because the statute, the inquiry notice does come from Sarbanes-Oxley. It's legislative. It's not court mandated. So it would be for Congress to adopt. But there's a reason they don't do that, that Congress hasn't adopted that. They want an end time. They want, there's policy reasons to have a statute of limitations. You could have a sympathetic court that says, well, there was wrongdoing. It was five years ago. So what? There was wrongdoing. I want it redressed. There's policy arguments behind a hard, fast date to say at some point you have to move on. But presumably there are limitations. There could be a limitation period as there indeed there is, five years from the event. But there's also a limitations period that's based on the awareness of the people involved. And it's just, it's hard for me to get a handle on that here because of facts such as, and I'll identify them and ask you to comment on what significance they have. Facts such as we're talking about mutual fund investors here who they're not going to be following particular stocks in the same way. They tend to be somewhat less sophisticated and more removed from the market. That's one of the reasons why they invest in mutual funds because they're not making decisions. The fact that they would have to identify the sponsor, promoter, whatever of the mutual fund to realize, they probably think in terms of their mutual fund investing in IBM, here they're talking about something going on with the management of the mutual fund. And then perhaps most of all, I take it this is supposed to be a class action. We're really talking about a marketplace activity. I'm not sure the individual plaintiff's story becomes that significant in the context of a class action. I think indeed one of the reasons that the reality of this practice is that it's attorney driven and the knowledge of the attorneys may itself become important, not because that the attorney knew that Mr. Bassler knew, but the attorney knew and the inquiry notice to go out and find the right client is out there. How do you put all these things together so that you have a reason to say, look, the time is run here? I don't know that the, I think that there's strong policy reasons behind both the statute of repose, which is five years, and the inquiry notice provision. And it, you know, I hear what you're saying. I think you guys are moving more towards actual notice for the two years of surveillance actually rather than inquiry notice. But inquiry notice is a reasonable investor. It's not every mutual fund investor. And many mutual fund investors may fall into that camp. Well, I'm talking about inquiry notice. You have to know something to be on notice to inquire. I mean, it doesn't require a wrapped package saying, okay, here's everything you need for a judgment plop on your lap. But an individual, if it's an individual case, presumably the individual has to know something. Part of my problem, this isn't really an individual case. Yeah, I understand what you're saying now, I think. You're saying that the individual has to have actual knowledge of the suspicious activity that gives rise to inquiry notice. And I would submit that's not the standard under inquiry notice. It is what a reason, that's why you go to a reasonable person. I think you can say it was widely followed. And I would, to your point about mutual funds and protecting investors, the whole Federal Securities regime protects investors. And I mentioned there was two dozen. You know, it doesn't always do a very good job. The Federal Securities laws? Yes. Well, it doesn't. Mr. Madoff is, of course, the most recent example. But one thing it does do is the class action bar, the plaintiff's class action bar, if you're talking about bringing claims when a scandal breaks, the one thing that they do is there's not a two-year ramp-up period. When the revenue-sharing scandals broke, actions were filed, including against my client, and if you look from January 2004 to December 2004, seven dozen class actions filed against 22 different mutual fund advisors, everybody in the industry was sued. My client was the largest. They were all class actions, and they all protected me. I have experiences like seven lawsuits being filed in the same day, and then you sort it out. It is hard to understand how this time lag happens. Is there, I take it there's nothing in the record that gives us information as to that? I, you know, I can't explain why. I haven't seen anything. There was, well, there was a case filed against, the same case was filed against us in July 2004. It gets dismissed as a kind of disclosure case and becomes an excessive fee case before judge fees, and that was tried in August, so that case never went away. Corby was just tried, and the judge just issued a preliminary intended decision. It's not even a final decision yet, so the case went on. But it didn't cover this aspect? It certainly covered, there was a lot of discovery and aspects of it that covered revenue-sharing, but it wasn't a fraud disclosure claim for shareholders. That one, by that time, it had morphed into excessive fees. It started as a pure disclosure claim under 34B of the Investment Company Act, which is a fraud claim, an analog to 10B. And I gather these plaintiffs are not part of any class, of any pending suit, is that right? They will, they'd be, as shareholders currently, they'd be covered by the Corby. If there's any recovery in the Corby action, the judge ruled for capital research, so unless he changes his intended decision, there won't be a recovery. But he would certainly, that was eventually a derivative action on behalf of all the funds, and to the extent they were shareholders in the funds, they'd get any recovery. But that would be my point, Your Honor, is that if the class action bar is out there vigilantly. Well, counsel, there have been occasions, perhaps frequent occasions, in which class action lawyers shopping for clients have done mass national advertising to acquire plaintiffs. I'm very aware of that. You're not contending that that occurred in this case, and that Ms. Chin or Mr. Basler had actual notice that lawyers were shopping for clients? I don't know that, one way or the other. But let me pursue a little bit the possibility that the individual plaintiffs in this case are members of classes. They may be then precluded by the result in the Corby case? Or is their complaint sufficiently different from what ends up being litigated in the Corby case, that they're not precluded? Are they members of that class? Can you help me out? So just to put it in context, Corby's filed in July 2004. There's a motion to dismiss on 12B6. It's dismissed all of the claims for no implied rights of action under the 40 Act. The state law claims were preempted under SLUSA. The judge gives them leave to replete an excessive fee claim under Section 36B of the Investment Company Act of 1940, bringing it derivatively on behalf of the funds. The plaintiffs do that. Mr. Reese dropped out of that case at some point and switched firms. So Millberg continues to pursue that case as an excessive fee case, conducting much discovery about revenue sharing, same type of allegations. The fees were inflated to cover revenue sharing payments and payments of additional comp. It was very much an issue. It's a part of the judge's case. So the short answer is the fraud claim would not be precluded by what happens? No. We'd be hard pressed to take that argument, I think. Okay. If you have no further questions, thank you. Thank you very much. Now, we took Mr. Murphy well over time. Mr. Reese, what would you like to say? I just want to clear a couple of things up on the record, which I believe were misstated. And I think Your Honors realize what they really want to do is shut the door on mom and pop investors. One important thing, the class period in this case ends August 30, 2006. So it just doesn't make any sense to say that the statute of limitations ended well before then. The claims are still going. The case was filed on December 5th of 2006. Has the class been certified? It hasn't gone past the motion to dismiss it. I assume not. So you've defined the class period yourself. You could put any date you wanted to down there. We base it upon what the NASD found. The two cases that defendants cited as what his authority was, one of them, the inquiry notice was triggered by an NASD action. In this case, we're saying if the inquiry notice is triggered as the date of the NASD action, the statute of limitations has not run, because that was February of 2005. So if you want to point to something and say, what can we look at so we can still have inquiry notice? Maybe some type of regulatory action like the NASD or the California Attorney General's Office or the SEC actually bringing an action. We don't have that here until February 2005. The complaint's filed well within that date. The other case he cites, that's Enron. It's mutual funds investing in Enron. Whether or not it's a matter of fact or a matter of law, maybe the Enron type of situation would splash across your evening news. And more importantly, you're stuck. You lose all value of your stock. So if you check your stock, you have no money left in Enron. This case is very different, because even if you looked at the price of your mutual fund every day, it wouldn't have changed because of this fraud, because they're secretly pulling out the money. I'm not sure how relevant this is to this case, but how much money did these individual investors have? And how much money, in your allegation, did they lose as a result of the fraud that you claim? The, right now we know, I don't know, as I stand here today, how much each investor had, either in their bank account or had invested. I know it's... No, I'm not interested in how many other assets they had. I'm interested in how much money they had invested and how much you say they lost as a result of the fraud. Sure. I don't know that as I stand here, Your Honor. I know it's in the tens of thousands of dollars. It wasn't... Per investor? Per the two lead investors. Many of the investors had maybe... In the tens of thousands of dollars, that's the amount invested or that's the amount you say is lost? Oh, the amount lost in total? Is that... I'm sorry. I think I'm asking this clearly. Okay. As to each individual plaintiff here, I would like to know, and if you don't know the answer, you can just say you don't know, how much each individual investor had invested and how much each individual investor lost as a result of the fraud that you claim. Correct. I don't have that answer as I stand here. One other point. Mr. Mercury kept saying there's fraud, fraud, fraud in all these articles. None of those articles say American funds committed fraud. They talked about other entities committing fraud. And it's interesting. One of the articles they cite states, as manager of the American funds, capital research has been the biggest beneficiary of the fund scandal, winning business from investors, fleeing other companies like Putnam Fund and Strong Funds who have been sued by regulators or otherwise tainted by the investigation into an improper fund tactics. This is from June 29th of 2004. So if you want to ask, what did the ordinary investor think then? They thought American funds wasn't involved in it because they were fleeing from these other funds that had been sued by regulators and putting their money into American funds, only then to have it secretly taken away from them. Mr. Mercury cites a Wall Street Journal article. It's a matter of debate whether or not the ordinary investor should see that. But if you look at it, he says A1. Well, the A1 news article talks about how American funds had grown so large in 2004 because they trusted American funds while they were fleeing from these other funds. But more importantly, that article is mid-November of 2004. So even if you want to say, OK, the A1 page of the Wall Street Journal should be imputed to everybody, that's three weeks before December 5th of 2004. So if you give a reasonable investor even three or four weeks to start his or her investigation, you're still within the statute of limitations. We submit that if you want to look at a period of time as to determine what is a reasonable period of time for investigation, you look at the California AG's office and the NAC who have teams of investigators who have subpoena power. They took until February 2005 and March of 2005. Individual investors should at least have the same amount of time that don't have investigators, that don't have subpoena power. How about your knowledge? My knowledge? Well, I can tell you when I was involved in the Corby case and if there was facts in the public record, we would have brought a securities fraud case and we didn't because there was not enough knowledge in the public realm to bring a securities fraud case. Those are not fraud claims. And Mr. Murphy didn't tell you, but they are basically, the trial I understand of that is you grew so largely and you didn't pass along the economies of scales to the investors. That's the trial they had recently in front of the judge. Completely different case. If you look at the Steyer's Second Circuit decision I cited to you earlier, it talks about whether you should look at the sophisticated securities lawyer as your standard or is it something else. And the Second Circuit says it's something else because the reasonable ordinary investor is not out there looking through SEC filings every day or reading on Lexis or getting on Pacer. The Corby case is not even accessible today on Pacer. I went on to Google. You can't get it. If you were sitting in Florida, Mr. Geis could not get access to the complaint. Or if you're sitting in Alaska or Maine or anywhere else. So to say that this put the public on knowledge and you can't even get it today, it's just unreasonable to hold investors to that standard. Okay. Thank you. Further questions from the bench? No. Thank both sides for very good arguments. Basler and Chin versus Capital Group Companies is now submitted for decision.
judges: Singleton, Fletcher W. , Clifton